UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KENNETH R. SISK, SR.,

                  Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                  Defendant.

CASE NO. C17-5675-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff Kenneth Sisk proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1974.[1] He has a GED and previously worked as a short order cook, motor vehicle and supply sales representative, security guard, and tractor trailer truck driver. (AR 30, 46, 77-78.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed his applications in January 2014, alleging disability beginning March 6, 2013. (AR 207-20.) The applications were denied initially and on reconsideration.

On September 16, 2015, ALJ Joanne Dantonio held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 38-86.) On February 5, 2016, the ALJ issued a decision finding plaintiff not disabled. (AR 16-32.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on June 23, 2017 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found the following impairments severe: lumbar degenerative disc disease; obesity; chronic obstructive pulmonary disease with tobacco dependence; left shoulder rotator cuff dysfunction; and adjustment disorder with mixed anxiety and depression. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform sedentary work, with additional limitations: can sit for one hour increments, stand and/or walk for no more than fifteen minute increments, and stand for one-to-five minutes after sitting one hour while remaining on task; never climb ladders/ropes/scaffolds, less than occasional ramps and stairs, occasional stoop, kneel, and crouch, and never crawl or balance; no overhead reaching on the left and occasional push/pull on the left at sedentary weight limits; avoid concentrated exposure to high impact vibrations and avoid even moderate exposure to hazards; capable of performing known semi-skilled work; occasional co-worker contact and superficial interaction with the public (requires no interaction); no requirement to set work goals or plans; and less than occasional changes in work tasks. With that assessment, the ALJ found plaintiff unable to perform past relevant work.

If a claimant demonstrates inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to adjust to work existing in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a semi-conductor dye loader, semi-conductor wafer breaker, and table worker.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v.*

*Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in evaluating the medical evidence, his testimony, lay evidence, and, as a result, in formulating the RFC and reaching the conclusion at step five. He requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

Symptom Evaluation

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).[2] The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The parties here disagree as to whether the ALJ found evidence of malingering. As discussed below, the ALJ provided specific, clear, and convincing reasons for not fully accepting plaintiff's testimony. The Court, as such, finds no need to address malingering.

---

[2] Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified the evaluation of subjective symptoms is not an examination of character. Social Security Ruling 16-3p. However, this change is not applicable to the February 5, 2016 ALJ decision in this case, and the Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 4

A.      Evidence of Exaggeration

An ALJ properly considers inconsistency with the evidence and a tendency to exaggerate. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), as well as self-limiting behavior, failure to give maximum or consistent effort on examination, and efforts to impede accurate testing, *Thomas*, 278 F.3d at 959. In this case, whether or not amounting to affirmative evidence of malingering,[3] the ALJ properly relied on evidence in the record raising serious questions as to the extent of plaintiff's limitations.

The ALJ first contrasted plaintiff's testimony that orthopedic surgeon Dr. Jos Cove told him his back was inoperable and "'too far gone'", with Dr. Cove's actual findings. (AR 23.) In a May 2013 examination, plaintiff got up very slowly, with significant groaning and moaning, had no extension, forward flexion just to upper thigh, and widespread nonfocal pain to palpation throughout the thoracic and lumbar spine, was unable to toe and heel walk, had normal motor strength on motor and sensory exam and nondermatomal hypesthesia throughout both legs, had no sensation in thigh, shin, and calf regions, negative straight leg raising, and good and nonpainful hip range of motion. (AR 384-85.) A prior CT scan showed mild degenerative changes, good alignment of spine, mild spinal stenosis, a large disc herniation at L4-5, and no significant abnormalities. (AR 385.) Dr. Cove's impression was a very deconditioned and overweight 38-year-old patient with back pain of significant chronicity, Waddell's signs of 5/5, indicating a significant nonorganic contribution, and entirely nondermatomal leg symptoms. (AR 23, 385.) Dr. Cove found plaintiff's alleged disability excessive, concluded he would not benefit from

---

[3] While the ALJ need not make a specific finding of malingering, there must be "'affirmative evidence suggesting . . . malingering.'" *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008) (quoted source omitted). "The essential feature of malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." Diagnostic and Statistical Manual of Mental Disorders at 727 (5th ed. 2013).

ORDER
PAGE - 5

surgery, was hesitant to try an injection given that intervention could increase the disability conviction, recommended physical therapy and weight loss, and told plaintiff "this is not a surgical problem and that as a surgeon I have nothing to offer." (AR 385; *see also* AR 23-24.) He also told plaintiff "it would be hard to maintain that he cannot function even in a sedentary job." (AR 385.) Dr. Cove arranged for an injection, but no further follow up, and opined: "Again, there may well be some degree of stenosis, but in a patient with this presentation and widespread nonorganic and nondermatomal pattern of pain, surgical intervention is clearly contraindicated." (*Id.*) Considering this and other evidence, the ALJ reasoned plaintiff "consistently reported to providers that his back was 'inoperable' in an effort to show he was more limited than he was, without explaining the doctor simply did not find any surgery was necessary." (AR 24 (citing AR 634).)

Examining neurosurgeon Dr. Yoshihiro Yamamoto also raised questions about plaintiff. In August 2013, Dr. Yamamoto found giveaway weakness of both legs, straight leg raise test positive on both sides with significant exaggeration, paresthesia in the legs that did not follow a particular dermatome, and severely antalgic gait. (AR 508-09.) He reviewed updated images, confirmed degenerative disc disease, and opined the symptoms did not correlate with particular nerve root compression and were "significantly magnified disproportional to x-ray and CT findings." (*Id.*) He recommended immediate smoking cessation and aggressive weight reduction, and deemed plaintiff a poor surgical candidate. The ALJ found no objective evidence to explain plaintiff's claim his legs go out or will not lift to go upstairs. (AR 24-25.)

The ALJ found numerous other examples of exaggeration. (AR 25.) A month after he saw Dr. Yamamoto, plaintiff walked with a limp and no assistive device. (AR 531.) On one occasion, a provider noted "'exquisite tenderness' to light touch diffusely," guarding, and exaggerated pain behavior. (AR 544.) On another occasion, plaintiff refused gabapentin and wanted "'something'"

for his pain, but the provider refused to prescribe narcotics. (AR 546-47.) Plaintiff stopped going to the provider for back pain and sought a referral to a pain clinic.

Despite normal findings at some examinations, plaintiff continued to pursue a pain clinic referral and reported significant limitations to providers. (AR 25 (citing AR 634).) In September 2014, a nurse practitioner prescribed a walker after plaintiff reported physical therapy thought he needed one. (AR 665). The following month, plaintiff fell while hunting, but did not disclose this activity to his treating provider when he appeared for appointments with his wheeled walker. (AR 649, 667.) The ALJ found it "unclear how one hunts in the woods with a walker" and observed that plaintiff continued to exhibit exaggerated symptoms at physical therapy, with one therapist noting he used the wrong arm for his cane. (AR 25 (citing AR 760).)

At a pain clinic in February 2015, an examiner noted symptom amplification and exaggeration and deemed plaintiff a moderate risk for opioid abuse and/or diversion. (*Id*.; AR 723-24.) While plaintiff testified to near inability to function, he reported the ability to function at 9/10 with opioids, but 3/10 without medications, and that the medications improved his ability to walk, perform household chores, sleep, and interact with others. (AR 25, 725-27.) He was prescribed opioids and soon requested an increase in dosage. (AR 730.)

In a March 2014 psychological examination, plaintiff told Dr. Lucretia Krebs he had no feelings in his legs, found it difficult to walk, and fell three or four times a day, but did not bring an assistive device to the examination. (AR 26, 596, 598.) He reported significant mental health symptoms of anxiety and depression, but no mental health treatment, and extreme back symptoms such as screaming in pain and toppling over when he bends. (AR 26, 597.)

Plaintiff unsuccessfully attempts to minimize and undercut the evidence relied upon by the ALJ. For example, he denies any evidence he understood Dr. Cove's medical opinion. However,

in addition to informing plaintiff the issue was not a surgical problem, Dr. Cove specifically responded to an inquiry as to whether plaintiff should apply for disability by telling him it would be hard to maintain he could not function even in a sedentary job. (AR 385.) Three months later, Dr. Yamamoto opined similarly and engaged plaintiff in a "detailed discussion of treatment options and risks." (AR 509.) While it is possible plaintiff did not understand these opinions, the ALJ's contrary interpretation of this and other evidence was rational and properly relied upon in the assessment of plaintiff's subjective symptom testimony. *See Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

B.    Activities

An ALJ may consider evidence of inconsistencies between a claimant's testimony and his conduct and activities. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009). Activities may undermine credibility where they contradict the claimant's testimony or meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff reported a hard time fishing and hunting given the need to walk and stand for long periods, to walk and hold a rifle, and to cast, stand, and reel in fish. (AR 268.) The ALJ noted evidence plaintiff had hunted on more than one occasion since the onset date: "In November 2013, the claimant did not want to commit to diabetes education because it was hunting season. The claimant was out hunting in October 2004. The claimant reported hunting in the woods in November 2014." (AR 24 (citing AR 547, 649, 700).) In October 2013, plaintiff reported chest pain while playing football. (AR 515, 553, 563.) Despite his reports of near inability to function and fear of driving, he drove in March and April 2015. (AR 688, 710.)

Plaintiff denies the significance of his hunting in 2014 given his September 2015 testimony

his condition had gotten worse. His wife stated he hunted only from his car (AR 260), and he reported only throwing a football, not running (AR 553, 563). Plaintiff suggests the ALJ could have, but failed to develop the record by asking questions about his activities, and describes the Commissioner's arguments on these points as improper post hoc rationales. *See Bray*, 554 F.3d at 1225-26 (court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.") Also, plaintiff testified he could drive.

Yet, the evidence plaintiff "fell . . . while hunting" in October 2014 (AR 649) and that another hunter "stuck his gun in [plaintiff's] abdomen" in November 2014 (AR 700), contradicts his wife's January 2014 statement of hunting only in a car. While standing and throwing a football to his children in August 2013, plaintiff, in October 2013, "slipped and fell" while "playing football with the neighbors." (AR 515, 553, 563.) The ALJ also reasonably pointed to driving as one of several activities suggesting a greater degree of functioning than alleged.

The ALJ was not required to provide plaintiff an opportunity to explain every inconsistency in the record. *Tonapetyan*, 242 F.3d at 1148. Nor does the Commissioner here improperly rely on post hoc rationales. The ALJ cited to all of the evidence described above, and specifically contrasted plaintiff's use of a walker at medical appointments with his hunting. (AR 24-25.) The Commissioner properly described the evidence and offered argument not "to invent a new ground of decision" but to provide "additional support for the Commissioner's and the ALJ's position." *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006).

C.   Work History

The ALJ found plaintiff "has a poor work history, even prior to his alleged onset date." (AR 24 (citing AR 231).) She found this to suggest plaintiff "is not motivated to engage in

substantial gainful activity [(SGA)]." (*Id.*) Plaintiff rejects the depiction of his work history, stating he worked full-time for many years as a commercial truck driver, but often had low net earnings after expenses. (*See* AR 223-24, 232-43.)

Plaintiff did work. However, as the Commissioner observes, the record reflects plaintiff's engagement in only some five years of SGA-level employment. (AR 231); 20 C.F.R. §§ 404.1574(b), 416.974(b). In several years, plaintiff's income fell substantially below those levels. (AR 231.) An ALJ may consider a claimant's work history in evaluating subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). While plaintiff's work history would not alone suffice to support the ALJ's decision, the ALJ rationally interpreted the evidence to suggest a lack of motivation to engage in SGA.

D.   Objective Medical Evidence

The ALJ found the objective medical evidence did not support the degree of limitation alleged. She described numerous medical records in support, including the results of imaging and the examination findings of Dr. Cove, Dr. Yamamoto, and various treating providers. (AR 24-27.) For example, when plaintiff sought care for chest pain in October 2013, he was noted to have normal range of motion, muscle tone, and coordination, 5/5 strength in all extremities, and intact sensation. (AR 555.) He again had normal musculoskeletal examinations in early 2014 and October 2014, when seeking care for a hernia and chest pain respectively, and none of these examiners reported his need for a cane or walker to ambulate. (AR 555, 560, 588, 646.) In February 2015, plaintiff was reported to walk with a normal, non-antalgic gait, and did not use an assistive device. (AR 723-24.) He had a negative straight leg test, bilaterally positive Kemp's sign, normal upper extremity strength, but some decreased sensation and reduced strength in his lower extremities, and the examiner noted the "exam was somewhat exaggerated as he [complaint

of] severe pain with mild palpation of his lumbar spine." (*Id.*) While seeking care for his hand in April 2015, plaintiff had a normal gait without a limp and, that same month, his treating provider stated plaintiff's chronic pain was generally well controlled on medication, with new/increased pain, mostly in the forearms, following a car accident. (AR 26, 691.) There was a minimal amount of evidence of ongoing complaints or care for plaintiff's shoulder impairment. (AR 26.)

The ALJ described the record as showing plaintiff's attendance at many medical appointments without complaining of mental health symptoms or significant complaints of symptoms, many normal mental status examinations (MSE), and his denial of depression at 2014 examinations. (*Id.* (citations omitted).) She described the March 2014 examination with Dr. Krebs as showing some mild findings. (*Id.* (citing AR 596-601).)

Contrary to plaintiff's contention, the ALJ did not improperly employ the "objective evidence test." "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); Social Security Ruling (SSR) 96-7p. The ALJ did not rely solely on an absence of supportive objective evidence. She offered a number of specific, clear, and convincing reasons for not accepting plaintiff's subjective symptom testimony. Nor did the ALJ improperly rely on evidence that examiners or providers who were not examining or treating plaintiff's back pain or mental health symptoms did not observe or find any impairment in those areas. Instead, the normal examination findings and the absence of symptoms unless related to the examination or treatment being offered serves to reinforce the ALJ's conclusions about both the lack of objective support and the evidence of exaggerated symptoms. Neither these arguments, nor others raised by plaintiff undermine the ALJ's consideration of the objective medical evidence.

E.     Mental Health Symptoms and Treatment

The ALJ found plaintiff's testimony about his mental health not credible, explaining:

> He testified he has extreme PTSD and depression, yet he has not tried any mental health medications. He said he does not like taking medications and does not want to be "zombified", yet he also testified to taking narcotics throughout the day that required him to sleep. Contrary to his testimony that he did not deal well with changes, he initially reported he handled them okay. The claimant's function report to this agency in 2014 is notable for a lack of any significant complaints of limitations due to anxiety or depression. The claimant did not seek care for his mental conditions or begin to report mental health symptoms to providers until May 2014, after being denied benefits by this agency.

(AR 23 (citations omitted).) Also, plaintiff often failed to complain about mental health symptoms, had many normal MSEs, denied depression at 2014 examinations, and had minimal findings on examination with Dr. Krebs. (AR 26.) While he attended counseling appointments, plaintiff continued to have many normal MSEs when treated for physical conditions, had mild symptoms at most examinations with his counselor, was described as happy at one examination, and denied depression in July 2015. (AR 27 (citations omitted).)

Plaintiff states he is willing to take pain medication because he cannot function without it, and notes evidence he stopped taking a medication prescribed for PTSD because it made him dizzy. (AR 681-82.) He cites the twenty-month difference between his completion of a function report and his testimony at hearing as reflecting the worsening of his condition over time, and points to the Ninth Circuit's recognition that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (quoted source omitted).

An ALJ may consider a claimant's failure to report symptoms as a basis for discounting his allegations. *See Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006). An ALJ also

properly considers evidence associated with a claimant's treatment, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), SSR 96-7p and SSR 16-3p, including unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), and/or conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

The ALJ did not here consider in isolation the failure to seek mental health treatment or to take medication. She reasonably considered the evidence associated with plaintiff's mental health as a whole, including objective findings, the failure to report symptoms, and the denial of symptoms, and drew reasonable inferences associated with both the timing of his report of mental health symptoms and his failure to take medications to treat those symptoms. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence."). This reasoning, along with the reasons outlined above, provide substantial evidence support for the ALJ's decision.

<u>Medical Evidence and Opinions</u>

Plaintiff avers error in the failure to evaluate clinical findings and other evidence from medical providers. He also asserts error in relation to medical opinions.

A.     <u>Clinical Findings and Other Medical Evidence</u>

Plaintiff maintains the ALJ erred in failing to evaluate clinical findings and other evidence from physical therapists Candice Duren and Ryan Winning, nurse practitioners Sara Holt-Knox, Faith Mmborothi, Benita Bizzell, and Harvey Hall, emergency room physician Dr. Bessie McCann, counselor Barbara Drescher, and clinician Patricia Guest. He also asserts error in the ALJ's failure to acknowledge the consistency of this evidence with other evidence of record and with plaintiff's testimony.

The ALJ need not discuss each piece of evidence in the record. *Vincent v. Heckler*, 739

F.2d 1393, 1394-95 (9th Cir. 1984). Instead, "she must explain why 'significant probative evidence has been rejected.'" *Id.* (quoted source omitted).

"The ALJ must consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041; 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *accord* §§ 404.1520c, 416.920c (for claims filed after March 27, 2017). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." §§ 404.1527(a)(1), 416.927(a)(1). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. To reject a physician's opinion, for example, the ALJ must provide clear and convincing reasons where the opinion is not contradicted by another physician, and specific and legitimate reasons supported by substantial evidence where the opinion is contradicted. *Lester*, 81 F.3d at 830. With some other medical sources, the ALJ may discount opinion evidence by providing reasons germane to the source. *Molina*, 674 F.3d at 1111.

As discussed below, the ALJ properly evaluated the medical opinions. It is further clear the ALJ considered the remaining significant and probative medical evidence of record. (*See* AR 19-20, 24-29.) She was not required to address and provide reasons for rejecting medical evidence that did not identify any specific functional limitations and/or opinions offered in relation to an ability to work. *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010). *See also Morgan*, 169 F.3d at 601 (finding substantial evidence support for ALJ's determination physician's reports did not show how a claimant's "symptoms translate into specific functional deficits which preclude work activity."; while physician "identified characteristics" that might at

times limit the ability to work on a sustained basis ("affective instability, intense anger, daily suicidal thoughts, and chronic feelings of emptiness") he "did not explain how these characteristics precluded work activity"). *Cf. Marsh*, 792 F.3d at 1171-73 (discussing error in the ALJ's failure to even mention notes from a physician that contained medical opinions). The ALJ did not, therefore, err in the consideration of evidence from the physical therapists and other medical providers identified by plaintiff.

Nor does plaintiff demonstrate error in the ALJ's consideration of the medical evidence as a whole. The ALJ bears the responsibility for resolving conflicts in the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). *See also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ's conclusions were rational and supported by substantial evidence.

B.     Dr. Cove and Dr. Yamamoto

The ALJ assigned great weight to the opinions of Drs. Cove and Yamamoto. Both physicians are specialists and had the opportunity to examine plaintiff and review objective images. (AR 27.) The ALJ found Dr. Yamamoto's opinion plaintiff was exaggerating symptoms consistent with objective findings on exam, such as a positive Waddell's sign and objective images that did not show findings consistent with the degree of limitation alleged. She likewise found the opinion of Dr. Cove consistent with findings on exam, with no medical explanation consistent with the alleged degree of limitation and positive Waddell's signs. The ALJ also considered and reflected plaintiff's exaggerated behavior in the RFC and noted that, even giving some

consideration to his allegations, the VE found work plaintiff could perform.

Plaintiff argues the ALJ erred in failing to acknowledge more recent evidence confirming many clinical findings consistent with his complaints, and that neither the fact his back pain was not amenable to treatment, nor the presence of Waddell's signs proves he was not experiencing back pain. Plaintiff does not, however, establish error in the consideration of the opinions of Drs. Cove and Yamamoto. Having accepted this opinion evidence, the ALJ was not required to provide further explanation. *See Turner*, 613 F.3d at 1223 (ALJ need not provide reasons for rejecting medical opinions where limitations are incorporated into or "entirely consistent" with the opinions). The ALJ properly considered the consistency between the medical record as a whole and the opinions of these physicians, as well as their specialization. 20 C.F.R. §§ 404.1527(c)(4)-(5), 416.927(c)(4)-(5).

C.    <u>Dr. Krebs</u>

Dr. Krebs diagnosed plaintiff with adjustment disorder with mixed anxiety and depression. She found plaintiff's mental prognosis guarded, noting his reticence to seek mental health treatment for his "depression and anxiety that are clearly associated with his limited ability to engage in activities." (AR 600.) She found plaintiff had limited insight into his mental health, his mobility appeared to be extremely compromised, he had adequate fund of knowledge, no problems with concentration and focus, and intact memory functions, but had limited social interactions and his overall adaptation appeared to be rather poor.

The ALJ gave little weight to Dr. Krebs' opinions, finding them largely based on plaintiff's exaggerated presentation and report, and consistent with the overall pattern of exaggeration. (AR 28.) "While Dr. Krebs did not find evidence of malingering, [she] did not have the opportunity to review the entire record of evidence to form a comprehensive opinion of functioning." (*Id.*) The

ALJ stated that, in particular, Dr. Krebs did not look at evidence showing exaggeration upon exam and the finding of an orthopedic specialist there was no basis for the claimed degree of pain. The severity of Dr. Krebs' findings were inconsistent with plaintiff's minimal mental health treatment and the many normal MSEs. While plaintiff would not take mental health medications due to possible side effects, he inconsistently took heavy medications for his pain. Dr. Krebs also made assumptions about the severity of plaintiff's physical condition "without being qualified." (*Id*.) She reported extremely compromised mobility even though plaintiff appeared for the exam without the assistive device he claimed he needed to walk. She found plaintiff had limited social interactions despite the fact he told her about friends and other evidence showed he hunted with friends. Plaintiff also exaggerated his symptoms at the appointment with Dr. Krebs, reporting symptoms he did not complain of elsewhere, such as his eye hurting and his hands shaking.

The ALJ incorrectly cited to Dr. Yamamoto's report in describing Dr. Krebs' review of records. (AR 28 (citing AR 508-14, 596).) However, this error was harmless. *See Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (sources omitted). In considering the weight to afford a medical opinion, an ALJ may consider the extent to which a medical source is familiar with other information in the record. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Dr. Krebs reviewed the report from Dr. Yamamoto and an August 25, 2013 provider note from Dr. Sangu Yonooh. (AR 596.) She found it "interesting to note" Dr. Yamamoto's observation that plaintiff's symptoms did not correlate with particular nerve root compression and were significantly magnified proportional to x-ray and CT findings. (*Id*.) Dr. Krebs did not have the opportunity to consider the evidence of exaggeration from other providers, including, but not limited to, Dr. Cove. The

ALJ reasonably concluded Dr. Krebs' lack of familiarity with the record as a whole inhibited her ability to form a comprehensive opinion of functioning.

The ALJ also reasonably relied on plaintiff's exaggerated presentation and report. *See generally Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ may reject treating provider's opinions if based "to a large extent" on discredited self-reports and not clinical evidence). As plaintiff observes, Dr. Krebs made her own observations and findings and, in conducting a psychological evaluation, must necessarily rely in part on self-reported symptoms. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[Psychiatric] [d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness."; finding a psychologist's partial reliance on a claimant's self-reported symptoms not a reason to reject the opinion where the psychologist also conducted a clinical interview and MSE). However, the record in this case is notable in containing multiple instances in which plaintiff was found or observed to have exaggerated symptoms and the status of his condition. The ALJ reasonably interpreted the report from Dr. Krebs as showing plaintiff engaged in that same behavior during her evaluation. (*See* AR 26.) While Dr. Krebs found no obvious signs of malingering or factitious behavior and found "collateral data" to suggest plaintiff's experience of pain "may be exacerbated by his mood disorder" (AR 598), she also lacked a complete understanding of the history and extent of plaintiff's exaggerated behavior.

Plaintiff otherwise challenges the ALJ's conclusions by asserting the failure to acknowledge the many clinical findings supporting Dr. Krebs' opinions and noting her ability to base her opinions on independent medical findings, clinical observations, and expertise. The Court

finds the ALJ reasonably interpreted Dr. Krebs' MSE as showing mild findings. (AR 26 and AR 598-99 (showing, *inter alia*, moderate level of distress, cooperative attitude, logical and coherent content of thought, slow in rate, but normal tone and volume in speech, full orientation, recall of two out of three objects, and one mistake in one of three concentration tests).) The ALJ further reasonably considered inconsistencies between Dr. Krebs' opinions and the medical evidence of record, including the minimal mental health treatment, MSEs, refusal to take mental health medications, and plaintiff's activities, as well as inconsistencies between plaintiff's appearance and reporting at the examination and Dr. Krebs' opinions. *See, e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancy or contradiction between opinion and the physician's own notes or observations); *Tommasetti*, 533 F.3d at 1041 (inconsistency with the record); *Rollins*, 261 F.3d at 856 (inconsistency with the claimant's level of activity, and discrepancy between the opinion and the physician's description of the claimant and prescription of a conservative course of treatment); and *Morgan*, 169 F.3d at 603 (inconsistencies within and between physicians' reports).

While an ALJ may not reject a physician's opinion regarding limitations solely on the grounds they are outside the doctor's area of expertise, *see Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), she may consider a physician's area of expertise in determining the weight a doctor's opinion should be given, 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5); *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (the opinions of a specialist are, as a general matter, entitled to more weight than the opinions of a medical source who is not a specialist). The ALJ here properly discounted Dr. Krebs' observations of plaintiff's physical functioning and opinion regarding mobility in light of the contrary observations and opinions of two examining specialists. *Molina*, 674 F.3d at 1112 (ALJ properly considered that an opinion was inconsistent

with a source who specialized in the field of psychiatry and "whose opinion was therefore entitled to greater weight.").

D.    Non-Examining Physicians

The only other medical opinions came from non-examining physicians. In September 2014, Dr. Charles Wolfe found plaintiff capable of light work, with some postural and environmental limitations. (AR 123-25, 138-40.) The ALJ gave the opinions significant weight, noting review of all medical records then available, the objective evidence, and issues with plaintiff's testimony. (AR 28.) The ALJ nonetheless found plaintiff more limited than opined by Dr. Wolfe, considering his claims, obesity, breathing impairment, and left shoulder condition.

Drs. Edward Beatty and Carla van Dam evaluated plaintiff's psychological functioning. (AR 28-29, 96-98, 110-12, 125-27, 140-42.) In September 2014, Dr. van Dam opined plaintiff could understand, remember, and complete simple tasks and do some complex tasks, but not on a regular and continuous basis; was distracted depending on pain, but could persist for extended periods; is able to work with supervisors and a limited number of coworkers, but would do best with only occasional, superficial interaction with the public; needed clear job requirements that do not change frequently; and is not well-motivated to set up personal goals, but can carry out simple goals and plans set by supervisors. (*See id.*) These opinions were consistent with the March 2014 opinions of Dr. Beatty. The ALJ gave the opinions significant weight because they were based on a review of medical records then available and consistent with finding moderate cognitive and social limitations, the RFC, and with the overall objective medical evidence, which showed minimal mental health treatment and many normal MSEs. (AR 29.)

Plaintiff argues that, because they did not review evidence beyond September 2014 and did not fully account for his complaints, these opinions were entitled to little weight. However,

the non-examining physicians reviewed all earlier medical evidence and opinions, including the evidence from Dr. Krebs. The ALJ, moreover, found the opinions consistent with the overall record and plaintiff more limited than opined by Dr. Wolfe, and assessed limitations consistent with those opined by Drs. van Dam and Beatty. The non-examining psychologists also assessed more specific limitations than the generalized functional assessment offered by Dr. Krebs. (*See* AR 600.) The ALJ, in sum, did not err in considering the medical evidence and opinions.

Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of a lay witness only upon giving a reason germane to that witness. *See Smolen*, 80 F.3d at 1288-89.

A.    Social Security Administration (SSA) Interviewer

In a January 2014 interview, SSA employee B. Holden noted: "Claimant appeared to be in severe pain during the interview. He would stretch, stand, sit. He was walking with a waddle and slowly when he came to and left interview. It took him some time to get in and out of the chair." (AR 245.) Plaintiff identifies error in the ALJ's failure to evaluate this lay evidence. SSR 16-3p ("Other evidence that we will consider includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel[.]"); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (agency will consider "observations by our employees and other persons.")

However, the failure to address lay testimony is harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina*, 674 F.3d at 1115 (quoted sources omitted). The Court must look to the record as a whole "to determine whether the error alters the outcome

of the case." *Id*. The ALJ may consider, for example, whether "the testimony is similar to other testimony that the ALJ validly discounted, or . . . is contradicted by more reliable medical evidence that the ALJ credited." *Id*. at 1118-19.

In this case, the ALJ's failure to address the SSA interviewer lay statement is properly deemed harmless. The ALJ gave significant weight to opinions of examining specialist physicians contradictory to the observations of the lay witness. *Baker v. Berryhill*, No. 15-35284, 2017 U.S. App. LEXIS 26258 at *8 (9th Cir. Dec. 21, 2017) (finding no harmful error in failure to discuss evidence of SSA interviewer who reported claimant's "difficulty with mobility and needed to stand periodically due to pain in her back and hips[,]" where the ALJ credited more reliable, contradictory medical evidence and the claimant did not show "how omitting discussion of the lay witness testimony would have changed the ALJ's decision.") (citing *Molina*, 674 F.3d at 1119). The ALJ's specific, clear, and convincing reasons for rejecting plaintiff's testimony also apply equally well to the observations of the lay witness. *Molina*, 674 F.3d at 1121-22 ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless).

B.      Third Party Function Report

The ALJ addressed a third party function report completed by plaintiff's wife, Vera Sisk. As described by the ALJ:

> Ms. Sisk reported the claimant could not stand or sit for long, and he cannot walk a long distance. When he does either one, his back goes out or he is in a lot of pain. It was further reported that the claimant's conditions affected the ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and concentrate. However, she also reported he could give their dog a bath, make himself a sandwich, and vacuum or sweep once in a while. He goes outside every day and can drive in town. He watches television and

uses an Xbox all the time. She reported he can follow instructions very well. The undersigned has considered this evidence and gives it some partial weight. Some of the activities reported such as sweeping, driving and playing Xbox are consistent with his [RFC]. However, the report his back goes out if he stands or sits for long is inconsistent with the objective medical evidence. Some of the degree of limitation reported is similar to the claimant's reports which are not deemed credible. While it supports the overall record that the claimant has some physical limitations, it fails to support any limitations on functional capacity greater than that accounted for [in the RFC].

(AR 29-30).

The ALJ provided germane reasons for discounting this lay testimony, including inconsistency with the medical evidence and with evidence of plaintiff's abilities and activities. *See, e.g., Bayliss*, 427 F.3d at 1218 (ALJ properly accepted lay testimony consistent with claimant's activities and objective evidence and "rejected portions of their testimony that did not meet this standard."); *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports). The ALJ also properly found the reasons for discounting plaintiff's testimony applicable to the testimony of the lay witness. *Molina*, 674 F.3d at 1122. Plaintiff does not demonstrate error.

<u>RFC and Step Five</u>

Plaintiff argues that, given the errors in the consideration of the medical evidence, his symptom testimony, and lay evidence, the ALJ also erred in assessing the RFC and at step five. Finding no earlier errors, this mere restating of plaintiff's argument does not show error at steps four or five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).[4]

/ / /

---

[4] Plaintiff noted the VE's testimony an individual who needs to use a walker or cane may not be hired due to liability issues. However, "[i]n deciding whether a significant number of jobs exist in a region or in several regions, an ALJ may not consider the hiring practices of employers or whether a claimant actually could obtain work if he or she applied." *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012).

## <u>CONCLUSION</u>

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>6th</u> day of July, 2018.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 24